UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD NEWBERNE,

        Plaintiff,

v.

NIAGARA CENTRAL REVENUE, INC.,
ROBERT T. WASHINGTON, JR.,
ANGELA B. GIGLIA,
FIVE STAR ACQUISITION, INC., and
JACALYN ANN SESSUM,

        Defendants.
_____/

<u>COMPLAINT</u>

**I.**    **Introduction**

    1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit credit card account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other adverse consequences, and extort the payment of money from plaintiff.

    2.    Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*.

    3.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country

1

and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of

consumers out of millions of dollars by running the same type of scam that is described in this complaint. See also, Federal Trade Commission v. National Landmark Logistics, LLC et al., U.S. District Court, District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC, which described the same type of scam that is described in this complaint.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

## II.    Jurisdiction

8.      The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.   Parties

9.      Plaintiff Donald Newberne is an adult, natural person. Mr. Newberne is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Newberne is a "person" as the term is defined and used in the DPPA.

10.     Defendant Niagara Central Revenue, Inc. ("NCR") is an active New York corporation, incorporated on or about September 16, 2015. According to the New York Department of State, the registered address for NCR is a strip mall at 561 Main Street, Tonawanda, New York 14150. NCR actually operates at 15 Webster Street, Suite 6, North Tonawanda, New York 14120. NCR uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. NCR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NCR is a "debt collector" as the term is defined and used in the FDCPA.

11.      NCR and its employees and agents use multiple, unregistered company names when conducting their credit identity theft and debt collection scam, including: NCR Processing LLC; Niagara Central Processing LLC; Niagara Central Payment Processing; NCR Financial; R&W;  LMM Services; Lapinsky & Meyer Mediation; and Lapinsky Meyer Mediation Services.

12.      NCR's employees and agents use multiple aliases when conducting their credit identity theft and debt collection scam, including: Pat Thomas; Tyler Stewart; Mike Turner; and Michael Bennett.

13.      NCR and its employees and agents use multiple telephone numbers when conducting their credit identity theft and debt collection scam, including: 844-389-0865; 866-212-8608; 877-833-9432; 877-833-9439; 888-784-0555. The subscriber to the telephone numbers is defendant Robert T. Washington, Jr. and NCR Financial, 15 Webster Street, Suite 6, North Tonawanda, New York 14120.

14.      NCR and its employees and agents use multiple email addresses when conducting their credit identity theft and debt collection scam, including: ncrprocessing@consultant.com. Emails sent by NCR uses the IP address 72.45.236.43, which according to Charter Communications, was registered on October 26, 2018 to "R & W, 15 Webster Street, Suite 6, North Tonawanda, New York 14120."

15.      NCR and its employees and agents use multiple, fake addresses when conducting their credit identity theft and debt collection scam, including: P.O. Box 2473, Toledo, Ohio 43604; and 141 Goundry Street, North Tonawanda, New York 14120, which is a location

occupied by a branch of the United States Postal Service.

16.     NCR and its employees and agents process the money they unlawfully coerce from consumers as electronic check transfers, using a company named Seamless Chex, Inc., 401 Park Avenue South, Floor 10, New York, NY 10016, that directly deposits the unlawfully obtained funds into an account maintained by defendants with Boulevard Federal Credit Union. NCR's unlawful activities violate the terms of their agreement with Seamless Chex, Inc.

17.     NCR directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Newberne that are described in this complaint.

18.     Defendant Robert T. Washington, Jr. is a natural person, age 47, purportedly residing at 104 Markley Drive, Getzville, New York 14068. Mr. Washington uses multiple telephone numbers to conduct his credit identity theft and debt collection scam, including: 716-713-1193. Mr. Washington is an owner, officer, director, manager, employee and agent of NCR. Mr. Washington uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Washington regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Washington is a "debt collector" as the term is defined and used in the FDCPA.

19.     Mr. Washington (a) created the collection policies and procedures used by NCR and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NCR, (c) oversaw the application of the collection policies and procedures used by NCR and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NCR and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e)

ratified the unlawful debt collection practices and procedures used by NCR and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NCR and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

20.    Mr. Washington directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

21.    Defendant Angela B. Giglia. is a natural person, age 36, purportedly residing at 104 Markley Drive, Getzville, New York 14068. Ms. Giglia is an owner, officer, director, manager, employee and/or agent of NCR. Ms. Giglia uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Giglia regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Giglia is a "debt collector" as the term is defined and used in the FDCPA.

22.    Ms. Giglia (a) created the collection policies and procedures used by NCR and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NCR, (c) oversaw the application of the collection policies and procedures used by NCR and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NCR and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NCR and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used

by NCR and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

23.     Ms. Giglia directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

24.     Five Star Acquisition, Inc. ("FSA") is an active New York corporation, incorporated on or about October 15, 2012. According to the New York Department of State, the registered address for FSA is 136 Edna Place, Buffalo, New York 14209, which is the residence of defendant Jacalyn Ann Sessum. FSA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. FSA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. FSA is a "debt collector" as the term is defined and used in the FDCPA.

25.     FSA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Newberne that are described in this complaint.

26.     Defendant Jacalyn Ann Sessum is a natural person, age 66, purportedly residing at 136 Edna Place, Buffalo, New York 14209. Ms. Sessum is an owner, officer, director, manager, employee and agent of FSA. Ms. Sessum uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Sessum regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Sessum is a "debt collector" as the term is defined and used in the FDCPA.

27.     Ms. Sessum (a) managed or otherwise controlled the daily collection operations of FSA, (c) oversaw the application of the collection policies and procedures used by FSA and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by FSA and NCR, and their employees and agents, to collect debts from consumers, including the

tactics and scripts that were used to attempt to collect an alleged debt from Mr. Newberne as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by FSA and NCR, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by FSA and NCR, and their employees and agents, in attempts to collect an alleged debt from Mr. Newberne as stated in this complaint.

28.     Ms. Sessum directly and indirectly participated in the unlawful efforts to collect an alleged debt from Mr. Newberne that are described in this complaint.

29.     Ms. Sessum is the mother of non-party Maurice Sessum, age 43, who was charged by the United States in 2015 with wire fraud and other crimes arising out of his operation of a Buffalo, New York based debt collection scheme, operating as Four Star Resolution, that used the same unlawful tactics that are described in this complaint, and that bilked consumers out of more than $31 million. Mr. Sessum pleaded guilty on November 17, 2016 and currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania, with a projected release date of September 1, 2025.

30.     Ms. Sessum also is the mother of non-party Laurence A. Sessum III, age 47, who was charged by the United States and convicted in April 2019 of wire fraud, money laundering and other crimes, arising out of his operation of a Charlotte, North Carolina based debt collection scheme that used the same unlawful tactics that are described in this complaint, and that bilked consumers out of more than $6.1 million. On November 18, 2019, Mr. Sessum was sentenced to a term of imprisonment of eleven years and four months. On June 25, 2020, the court entered an Order, requiring Mr. Sessum to self-report to the Bureau of Prisons no later than September 29,

2020 to begin serving his sentence. *USA v. Okomba et al.,* U.S. District Court, Western District of North Carolina (Charlotte), Case No. 3:18-cr-00292-RJC-DSC.

31.     All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

32.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

33.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

IV.   **Facts**

34.    Sometime prior to January 2019, plaintiff Donald Newberne's private, personal and financial information, including Mr. Newberne's Social Security Number, date of birth, residential address, telephone numbers, and banking information, was compromised, stolen and unlawfully used to create a counterfeit MasterCard credit card account, No. 5440455012735802, allegedly issued by either Barclays Bank or Citibank, along with a related, counterfeit and allegedly unpaid debt.

35.    The perpetrators included Mr. Newberne's counterfeit account in multiple portfolios containing thousands of other counterfeit credit card accounts, and then sold the portfolios to multiple criminal enterprises across the country, to be used to contact and threaten consumers with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from the identity theft victims.

36.    Upon information and belief, one of persons that may have been involved in the creation of the portfolios of counterfeit accounts has the initials BRB and resides in South Carolina, but that will need to be determined through discovery.

37.    Mr. Newberne denies owing any money to Barclays Bank, Citibank, or any other

entity in connection with the account.

38.     A Bank Identification Number or "BIN" is the initial four to six numbers that appear on a credit card account. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific credit card.

39.     According to Barclays Bank, Mr. Newberne has never had a credit card account with Barclays Bank or any affiliated entity.

40.     According to Citibank, Mr. Newberne has never had a credit card account with Citibank or any affiliated entity.

41.     Moreover, the BIN (544045) for Mr. Newberne's counterfeit account is the BIN for Platinum MasterCard credit cards, issued by Capital One Bank (USA) N.A.

42.     According to Capital One Bank (USA) N.A., Mr. Newberne has never had a credit card account with Capital One Bank (USA) N.A.

43.     According to Capital One Bank (USA) N.A., Mr. Newberne's supposed credit card account, Account No. 5440455012735802, is counterfeit.

44.     In January of 2019, a non-party entity named Integrity Financial Solutions, LLC ("IFS"), an active South Carolina limited liability company, doing business using multiple, unregistered names, including Integrity Financial Services, Integrity Financial, LLC, IFS, LLC, and Legal Mediation Solutions, LLC, somehow acquired a portfolio of counterfeit accounts that included Mr. Newberne's counterfeit account, along with Mr. Newberne's stolen personal and financial information.

45.     In January of 2019, employees and agents of IFS placed calls and spoke to Mr.

11

Newberne by telephone. In the ensuing conversations, the IFS employees and agents falsely stated that (a) Mr. Newberne owed a balance of $757.41 to Barclays Bank in connection with Account No. 5440455012735802; (b) Barclays Bank was the "Client" of IFS; (c) IFS had been "contracted to collect the debt" by Barclays Bank; (d) IFS had filed a lawsuit against Mr. Newberne for "breach of contract and intent to defraud a financial institution;" (e) if Mr. Newberne did not pay money to IFS, a judgment would be entered against Mr. Newberne for more than $2,000.00, and Mr. Newberne would also be prosecuted; and (f) Barclays Bank had authorized IFS to settle the debt for $400.00.

46.     In response to the above-described false threats of litigation, prosecution and other adverse consequences, Mr. Newberne paid $400.00 by debit card to IFS. According to Mr. Newberne's bank, the debit card payments were deposited into a merchant account established in the name of "Legal Mediation Solutions" in Fort Mill, South Carolina, telephone number 855-756-6498.

47.     On January 8, 2019, IFS mailed to Mr. Newberne on IFS letterhead, a letter captioned "PAYMENT PLAN." On January 25, 2019, IFS mailed to Mr. Newberne on IFS letterhead, a letter captioned "FINAL PAYMENT - NOTICE OF RECEIPT, acknowledging Mr. Newberne's payments of $400.00, and declaring the counterfeit account to be "Paid in Full" and "closed." A copy of the two letters are attached to this complaint as Exhibit A.

48.     In March of 2019, a non-party entity named Liberty Solutions & Associates, LLC ("LSA"), an active South Carolina limited liability company, and calling itself TriStar Litigation, somehow acquired a portfolio of counterfeit accounts that included Mr. Newberne's counterfeit account, along with Mr. Newberne's stolen personal and financial information.

49.     In March of 2019, employees and agents of LSA placed calls and spoke to Mr.

Newberne by telephone. In the ensuing conversations, the LSA employees and agents falsely

stated that (a) Mr. Newberne owed a balance of $1,200.00 to Barclays Bank in connection with

Account No. 5440455012735802; (b) Barclays Bank was the "Client" of LSA; (c) LSA had been

"contracted to collect the debt" by Barclays Bank; (d) LSA had filed a lawsuit against Mr.

Newberne for breach of contract and intent to defraud a financial institution; (e) if Mr. Newberne

did not pay money to LSA, a judgment would be entered against Mr. Newberne for more than

$3,000.00, Mr. Newberne would also be prosecuted; and (f) Barclays Bank had authorized LSA

to settle the debt for $600.00.

50.     In response to the above-described false threats of litigation, prosecution and other

adverse consequences, Mr. Newberne paid $600.00 by debit card to LSA. According to Mr.

Newberne's bank, the debit card payments were deposited into a merchant account established in

the name of "LSA" in South Carolina, telephone number 866-285-1488.

51.     On October 2, 2019, defendants sent an email from

customerservice@paymentgroup.net to Mr. Newberne. The subject line of the email stated

"PAID IN FULL LETTER" and the email purported to be from "Payment Processing" at

telephone number 888-640-1843. Attached to the email was letter on the letterhead of "LSA."

The letter referenced the counterfeit Barclays Bank account, as well as defendants' "Account ID:

AT335442-9511." The letter provided defendants' contact telephone number, 855-862-4552. The

letter acknowledged defendants' receipt of Mr. Newberne's payment of $600.00 and declared the

counterfeit account to be "PAID IN FULL." A copy of the email and letter are attached to this

complaint as Exhibit B.

52.     On July 13, 2020, the government filed a lawsuit against LSA and others for running the same type of scam that is described in this complaint, *Federal Trade Commission v. National Landmark Logistics, LLC et al.*, U.S. District Court, District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC.

53.     Despite the foregoing, the defendants named in this complaint somehow acquired a portfolio of counterfeit accounts that included Mr. Newberne's counterfeit account, along with Mr. Newberne's stolen personal and financial information, and as described below, have used that information to contact and falsely threaten Mr. Newberne with litigation, prosecution, and other adverse consequences, in efforts to extort the payment of money from Mr. Newberne.

54.     On or about September 17 and 18, 2019, defendants' employee and agent, known as a "point caller," placed multiple calls to Mr. Newberne's cellular telephone and left messages on Mr. Newberne's voice mail, stating that he was a process server named Mike Turner, hired to serve legal documentation on Mr. Newberne at either his residence or place of employment, that unless he received a "Stop Order," service was scheduled to take place the next day between 12:00 p.m. and 5:00 p.m., and that if Mr. Newberne had any questions, Mr. Newberne should call the "filing party" at 866-212-8608 and reference file number HR422601.

55.     On September 19, 2019, a return call made to telephone number 866-212-8608 was answered by defendants' employee and agent with the words "Legal Services, this is Michael Bennett." In the ensuing conversation, defendants' employee and agent made the following representations:

a)      This is the Legal Department of Lapinsky Meyer Mediation Services.

b)      Mr. Newberne owed $1,650.41 on an unpaid MasterCard, a Core Card,

financed by Citibank, Account No. 5440455012735802, opened December 2, 2010.

c)    The account is now owned by Five Star Acquisition.

d)    Five Star Acquisition had hired Lapinsky Meyer Mediation Services to mediate and collect the unpaid debt.

e)    Five Star Acquisition had filed a lawsuit against Mr. Newberne to collect the unpaid debt.

f)    Mr. Newberne was "being named as the sole respondent in the civil complaint. Right now there is a request for a civil judgment to be filed against you. They have it listed as an attempt to defraud a lending or financial institution. Our client feels that this was something done intentionally to defraud them."

g)    "With court costs, attorney fees, and filing fees, it looks like the judgment amount they would be seeking is $2,895.13"

h)    Mr. Bennett could be called directly at 844-389-0865.

56.    On September 20, 2019, defendants' employee and agent placed a call to Mr. Newberne's cellular telephone and left the following message on Mr. Newberne's voice mail: "Donald Newberne, this is Mike Turner calling again. Donald, I had left you a couple of messages previously in regards to the documentation scheduled to come your way. You were on the schedule for service yesterday, however I received a Temporary Stop Order. As of this morning, though, that Stop Order has been rescinded and you're on schedule for service. So, I'll head out to your residence and place of employment. Any questions you could have, sir, need to

be directed to the filing party at 1-877-833-9432, file H as in Henry, R as in Richard, 22601 dash 9511. HR22601-9511."

57.     On October 8, 2019, defendants sent an email with attached documents to Mr. Newberne, stating that Mr. Newberne owed $2,895.13 to Five Star Acquisition in connection with the counterfeit Citibank credit card account, and offering to settle the counterfeit debt for $1,650.40. Mr. Newberne refused to sign the documents. A copy of the email and documents are attached to this complaint as Exhibit C.

58.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

59.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

60.     Defendants and their employees and agents falsely represented that Mr. Newberne owed money in connection with a counterfeit account.

61.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Newberne's alleged debt.

62.     Defendants and their employees and agents falsely represented that Mr. Newberne owed a debt that is not owed.

63.     Defendants and their employees and agents falsely represented the identity of the

16

entity to whom the alleged debt is owed.

64.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Newberne's personal and financial information, in an effort to coerce the payment of money from Mr. Newberne.

65.     Defendants and their employees and agents falsely represented that they are a mediation firm.

66.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

67.     Defendants and their employees and agents falsely represented that they have a Legal Department.

68.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

69.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

70.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Newberne to collect the alleged debt.

71.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Newberne to collect the alleged debt.

72.     Defendants and their employees and agents falsely represented that a process server was being dispatched in a matter hours to Mr. Newberne's residence and place of employment to serve Mr. Newberne with a summons and complaint that had been filed against Mr. Newberne in efforts to collect the alleged debt.

73.     Defendants and their employees and agents falsely represented that Mr. Newberne had committed fraud.

74.     Defendants and their employees and agents falsely represented that Mr. Newberne had defrauded a lending or financial institution.

75.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Newberne had committed a crime.

76.     Defendants and their employees and agents falsely implied that Mr. Newberne was going to be arrested and prosecuted unless Mr. Newberne paid money to defendants.

77.     Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Mr. Newberne.

78.     Defendants and their employees and agents falsely represented that Mr. Newberne owed a debt that included court costs, filing fees and attorney fees.

79.     Defendants did not intend to file a lawsuit against Mr. Newberne in any court in efforts to collect the alleged debt.

80.     Defendants and their employees and agents falsely represented and falsely implied that the alleged debt was adversely affecting Mr. Newberne's abilty to obtain credit and credit score.

81.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

82.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

83.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

84.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

85.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

86.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

87.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

88.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

89.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

90.    The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

91.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

92.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

93.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

94.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

95.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

96.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

97.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

98.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C.

§§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

99.      The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

100.      Defendants and their employees and agents failed to timely send to Mr. Newberne a notice containing the information required by 15 U.S.C. § 1692g(a).

101.      Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

102.      Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

103.      The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

104.      Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

105.    In connection with efforts to collect an alleged debt from Mr. Newberne, defendants obtained and used personal information regarding Mr. Newberne from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

106.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

107.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

108.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

109.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

110.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

111.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

112.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Newberne.

113.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Newberne.

114.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Newberne that was derived from Mr. Newberne's motor vehicle record.

115.    Alternatively, the entity that obtained Mr. Newberne's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Newberne that was derived from Mr. Newberne's motor vehicle record.

116.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

117.    Defendants knowingly obtained, disclosed and used Mr. Newberne's personal

23

information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

118.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Newberne's personal information obtained from the database.

119.    No defendant had Mr. Newberne's consent, permission, authorization or waiver to obtain Mr. Newberne's personal information from the database.

120.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

121.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

122.    Defendants intentionally and wilfully violated the DPPA.

123.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

124.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

**V.      Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

125.    Plaintiff incorporates the foregoing paragraphs by reference.

126.    Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

        consequence of which is to harass, oppress, or abuse a person in connection with

        the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

        representations and means in connection with the collection or attempted

        collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

        to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

127.    Plaintiff incorporates the foregoing paragraphs by reference.

128.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00,

25

pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to 18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: August 26, 2020                          /s/ Phillip C. Rogers
                                                Phillip C. Rogers (P34356)
                                                Attorney for Plaintiff
                                                6140 28th Street SE, Suite 115
                                                Grand Rapids, Michigan 49546-6938
                                                (616) 776-1176
                                                ConsumerLawyer@aol.com